# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8105 | **DATE** | 5/31/2002 |
| **CASE TITLE** | Byers, et al. vs. IL State Police, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiffs' motion to compel [42-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | 3 | |
| | Notified counsel by telephone. | number of notices | |
| | Docketing to mail notices. | JUN 0 3 2002 | |
| | Mail AO 450 form. | date docketed | 67 |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TAMMRA BYERS and PAULA TREHEY,  )
                                  )

    Plaintiffs,                )

                                    )

v.                                 )    No. 99 C 8105

                                  )

ILLINOIS STATE POLICE, TERRANCE  )    Magistrate Judge Nan R. Nolan
GAINER, GENE MARLIN, THOMAS    )
YOKLEY, DANIEL KENT, ROBERT      )
JOHNSON, DENNIS SLOMAN, KENNETH )
BOUCHE, JAMES COMERIE, STUART   )
ERLENBUSH, and DONALD THORPE,   )
individually and in their official capacity, )

                                  )

    Defendants.                )

DOCKETED

JUN 0 3 2002

## MEMORANDUM OPINION AND ORDER

Plaintiffs Tammra Byers and Paula Trehey sued the Illinois State Police ("ISP") and various individual members of the ISP alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, and denial of equal protection and free speech in violation of the First and Fourteenth Amendments to the United States Constitution. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court is the plaintiffs' Motion to Compel Defendants' Answers to Plaintiffs' Continuing Sets of Interrogatories and Continuing Requests for Production of Documents and Certification of Compliance with Federal Rule of Civil Procedure 37 (Docket Entry #42). The Court has read the parties' briefs, reviewed the relevant case law and heard oral argument. For the following reasons, the plaintiffs' motion to compel is GRANTED IN PART and DENIED IN PART.



## BACKGROUND

For purposes of this order, the Court assumes that the following facts taken from the plaintiffs' complaint are true. The plaintiffs' claims in this case center around their allegation that the ISP improperly refused to promote them to the position of master sergeant. The ISP hired Byers in 1983 and promoted her to the rank of sergeant in 1996. The ISP hired Trehey in 1974 and promoted her to the rank of sergeant in 1980. Byers has been qualified for a promotion to master sergeant since 1997 and Trehey has been qualified for the same promotion since 1980. Instead of promoting the plaintiffs, the ISP allegedly promoted less-qualified males. After the plaintiffs complained that they had been discriminated against on the basis of their sex, the ISP allegedly retaliated against them by passing them over for promotions in favor of less-qualified employees who did not complain of discrimination. Additionally, the ISP allegedly took other actions to hinder the plaintiffs' opportunities for a promotion, such as denying the plaintiffs certain work assignments. After filing charges of discrimination with the Equal Employment Opportunity Commission and receiving right-to-sue letters, the plaintiffs filed suit against the ISP and ten individual defendants.

## DISCUSSION

An analysis of the plaintiffs' motion to compel necessarily requires a brief overview of the principles governing failure-to-promote and retaliation claims under Title VII.

### I. Title VII

There are two basic methods of proof in an employment discrimination case: direct and indirect evidence. A plaintiff may use direct evidence to establish that her employer discriminated against her. "Direct evidence cases . . . are very rare in the employment discrimination context because employers are generally very careful to avoid statements that suggest discriminatory

intent—whether their true intentions are discriminatory or not." *Hoffman v. Caterpillar*, 256 F.3d 568, 576 (7th Cir. 2001). In most cases, plaintiffs proceed under the indirect method of proof articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because the plaintiffs' motion to compel mainly concerns their attempt to discover indirect evidence of discrimination, the Court must review the plaintiffs' burden under the *McDonnell Douglas* framework for each of their claims.

## A. Failure to Promote

Under the indirect method of proof in an employment discrimination case, the plaintiff bears the initial burden of establishing a prima facie case. In the context of a failure-to-promote claim, the plaintiff must present evidence that (1) she is a member of a protected group, (2) she was eligible for the relevant promotion, (3) she was not promoted, and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). If the plaintiff can substantiate her prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for failing to promote the plaintiff. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002). If the defendant can proffer such a reason, the plaintiff must then produce sufficient evidence from which a fact finder could reasonably conclude that the defendant's reason is a pretext for discrimination. *Id.*

## B. Retaliation Claim

The process by which the plaintiffs must establish their retaliation claims follows the same framework outlined above, although the elements of the prima facie case differ slightly. To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a statutorily protected activity (e.g., filing a charge of discrimination), (2) she was meeting the defendant's

legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated individual who did not complain of discrimination did not suffer the same adverse employment action. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the plaintiff can establish a prima facie case then, as noted above, the defendant will have the burden of proffering a legitimate reason for the adverse employment action. If the defendant provides such a reason, then the plaintiff must establish that the defendant's reason is pretextual. With these principles in mind, the Court turns to the specific discovery requests contested by the parties.

## II. Plaintiffs' Motion to Compel

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Discoverable information is not limited to that which would be admissible at trial. Information is relevant for purposes of Rule 26 "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, a plaintiff is not necessarily entitled to all discovery that is relevant under Rule 26. A court can limit discovery if it determines, among other things, that the discovery is unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

### A. Temporal Scope of Discovery

The defendants argue that several of the plaintiffs' discovery requests are overly broad because the requests seek information that significantly predates the claims in this case. The plaintiffs have since limited their discovery requests to the 1994-to-the-present time period. The defendants do not argue that this time period is overly broad. For purposes of this order, any

discovery that the Court orders the defendants to produce is limited to the 1994-to-the-present time period unless explicitly stated otherwise.

## B. Interrogatory Requests

### 1. Whether Certain Information Should be Sought by Plaintiffs During Depositions

Several of the plaintiffs' interrogatories request specific and detailed explanations. For example, Interrogatory 2-1[1] asks the defendants to:

> Identify and state in detail the exact reasons why [certain persons] were promoted to the position of Master Sergeant during the period of 1997-1999 instead of Plaintiff Byers. . . . In addition, state every reason why these individuals were considered to be "more prepared," and/or "the better candidate," and/or "more qualified" for promotion to the position of Master Sergeant than Plaintiff Byers.

(Exs. in Support of Pls.' Mot. to Compel, Ex. 3.) In response, the defendants argued that it would be more efficient for the plaintiffs to obtain this information during depositions. In their motion to compel, the plaintiffs argue that the defendants cannot dictate how the plaintiffs should conduct their discovery.

The Court agrees with the defendants that depositions would be a more practical method for obtaining certain information. Courts have routinely denied motions to compel based on a finding that a deposition would be a more efficient tool for the requesting party to acquire the sought-after information. *E.g., Pirollo v. First Union Nat'l Bank*, No. 99-4594, 2000 WL 1052138, at *3 (E.D. Pa. July 25, 2000); *Midwest Builder Distrib. Inc. v. Triangle Pac. Corp.*, No. 97 C 0326, 1999 WL

---

[1] The plaintiffs' discovery requests are divided into the following three phases: "Plaintiffs' First Continuing Set of [Interrogatories/Document Requests]," "Plaintiffs Second Continuing Set of [Interrogatories/Document Requests]," and "Plaintiffs' Third Continuing Set of [Interrogatories/Document Requests]." This order identifies each discovery request with two numbers—the first number stands for the phase of discovery and the second number represents the specific discovery request. For example, Interrogatory 2-1 refers to Plaintiffs' Second Continuing Set of Interrogatories, Interrogatory #1.

642385, at *1 (N.D. Ill. May 12, 1999); *Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, Nos. 93-5375 & 96-1816, 1996 WL 525862, at *9 (S.D.N.Y. Sept. 17, 1996). With this principle in mind, the Court turns to three interrogatories that seek specific and detailed explanations.

**(a) Interrogatory 1-4**

Interrogatory 1-4 states: "With respect to each individual Defendant, state in detail their knowledge and involvement for failing to promote or recommend promotion of Plaintiffs to the position of Master Sergeant on each occasion they were not selected for promotion." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) In their response, the defendants directed the plaintiffs to their answers to Interrogatory 1-2 and 1-15. The defendants' amended answer to Interrogatory 1-2 is a chart that lists the sergeants who were promoted to master sergeant instead of the plaintiffs. The chart identifies the individual who recommended the sergeant for promotion and a general reason for the promotion, e.g., "Nanninga was promoted to the rank of master sergeant because it was believed that he was [the] most prepared to be promoted to that position." (*Id.*, Ex. 10.) The defendants' amended answer to Interrogatory 1-15 lists all persons who have knowledge of the plaintiffs' claims and provides a general description of that knowledge, e.g., "Colonel [Daniel] Kent has knowledge regarding the District 9 master sergeant promotional process, as it related to Plaintiff Byers, from 1997 to the present." (Pls.' Reply in Support of Mot. to Compel, Ex. 5.) The defendants argue that these answers provide an adequate response to Interrogatory 1-4 and that any additional information would best be discovered through deposition testimony.

This Court concludes that the defendants' response to Interrogatory 1-4 is incomplete because the defendants' answers to Interrogatory 1-2 and 1-15 do not state the involvement of each defendant in each decision not to promote the plaintiffs. The defendants' answer to Interrogatory 1-2 identifies

the district commander who recommended certain officers for a promotion, i.e., it identifies the individual who choose not to recommend one of the plaintiffs for a promotion. However, the defendants' answers to Interrogatories 1-2 and 1-15 do not identify the individuals who approved that recommendation. Furthermore, the district commanders sometimes discuss potential recommendations with others during informal roundtable discussions prior to making a final decision. The defendants do not indicate whether any of the named defendants participated in any roundtable discussions regarding master sergeant promotions during the relevant time period. Regarding each named defendant, the defendants must state whether that defendant: (1) participated in a roundtable discussion at which the possibility of promoting or not promoting one of the plaintiffs was discussed; (2) recommended an individual for promotion to Master Sergeant; (3) approved or forwarded a recommendation to promote an individual to Master Sergeant; or (4) rejected a recommendation that either plaintiff be promoted to Master Sergeant. The Court agrees with the defendants, however, that it would be unduly burdensome to require the defendants to "state in detail their knowledge and involvement for failing to promote or recommend promotion of Plaintiffs to the position of Master Sergeant on each occasion they were not selected for promotion." The Court concludes that it will be more efficient for the plaintiffs to discover the details during a deposition of the relevant decisionmaker.

**(b) Interrogatory 1-5**

Interrogatory 1-5 states: "With respect to each individual Defendant, state in detail their knowledge and involvement in any disciplinary action taken or recommended against either Plaintiff." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) In their response, the defendants directed the plaintiffs' attention to "personnel files produced in response to Plaintiffs' First

Continuing Request for Production of Documents." For the reasons stated in the preceding section, the Court concludes that, regarding each named defendant, the defendants must state whether that defendant: (1) participated in a roundtable discussion at which the possibility of disciplining the plaintiffs was discussed; (2) recommended that either plaintiff be disciplined; or (3) approved, forwarded, or decided that either plaintiff be disciplined. The Court agrees with the defendants, however, that it would be unduly burdensome to require the defendants to "state in detail their knowledge and involvement in any disciplinary action taken or recommended against either Plaintiff." The Court concludes that it will be more efficient for the plaintiffs to discover the details during a deposition of the relevant decisionmaker.

**(c) Interrogatory 1-8**

Interrogatory 1-8 states "Describe in detail the procedure and or process followed in evaluating and ranking employees for promotions." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) In their response, the defendants directed the plaintiffs to their responses to Interrogatory 1-7 and to the documents produced in response to Document Request 1-6. The defendants' response to Interrogatory 1-7 describes the master sergeant promotion process as follows: (1) Sergeants qualify for promotion by placing within the top 65% of all sergeants who participate in the total promotional process; (2) Placement is determined by a candidate's overall score, which consists of a written test score (50%), a performance evaluation score (45%), and a seniority score (5%); (3) Those within the top 65% are placed on promotional certification lists that are arranged according to district; (4) The ISP Merit Board develops, administers, and scores the written test; (5) "Supervisors evaluate the sergeants on how the sergeant would perform on the next level"; (6) The top ten candidates on each certification list are considered equally eligible for promotion; (7) As promotions are accepted or

waived, the candidate with the next highest score is considered equally eligible; (8) The certification list remains in effect until a new list developed—usually on December 1 of each year; and (9) Due to requirements and time constraints, it is unlikely that a candidate will be considered for promotion after serving only one year in a rank. (Exs. in Support of Pls.' Mot. to Compel, Ex. 10.) In response to Document Request 1-6, the defendants produced a promotional skills evaluation document. According to the plaintiffs, this document does not elaborate on the information contained in the defendants' answer to Interrogatory 1-7.[2]

The Court concludes that the defendants' response to Interrogatory 1-8 is incomplete. The crux of the plaintiffs' complaint is that the defendants discriminated against the plaintiffs during the master sergeant promotion process. Under *McDonnell Douglas*, the plaintiffs bear the burden of establishing that they had the same or better qualifications than the officers who were promoted to master sergeant. *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998). Therefore, the plaintiffs are entitled to information regarding how master sergeant candidates are evaluated. The defendants' statement that "[s]upervisors evaluate the sergeants on how the sergeant would perform on the next level," fails to specify what elements or factors supervisors consider when evaluating a sergeant for promotion. With respect to each stage in the master sergeant promotion process, the defendants must identify any criteria that are used to evaluate the candidates. Regarding the written test, the defendants can comply with this request by supplying a copy of the written test. Regarding the performance evaluation score, the defendants must describe how a candidate is evaluated—the defendants must describe what factors are considered and how those factors are weighed to arrive at the performance evaluation score. The defendants must also specify how a

---

[2] Neither party provided this Court with a copy of the promotional skills evaluation form.

candidate's seniority score is calculated. The same applies to the district commander's recommendation. The defendants must specify whether a district commander's recommendation is oral or written. To the extent that district commanders consider any criteria in deciding which sergeant to recommend for promotion, e.g., leadership ability, the defendants must disclose that information to the plaintiffs—the defendants' response that "supervisors evaluate the sergeants on how the sergeant would perform on the next level" is not an adequate response. However, to the extent the plaintiffs seek details regarding how certain criteria are applied to each candidate, e.g., how the defendants evaluate a candidate's leadership ability, the Court concludes that it would be more practical for the plaintiffs to obtain those details during a deposition. Also, to the extent the plaintiffs seek information regarding promotions to ranks other than master sergeant, the plaintiffs' request is denied.

### 2. Geographic Limitation on Discovery

The defendants argue that Interrogatories 1-9, 2-1, and 1-10 improperly seek state-wide information rather than information limited to ISP District 9 and District Chicago—the districts in which the plaintiffs worked. The plaintiffs respond that they are entitled to state-wide discovery in this case.

Although discovery is broad, especially in employment discrimination cases, it is not unlimited. *Kresefky v. Panasonic Communications and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996). At a minimum, the requested discovery must relate to the particular claims of the case. *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 516-17 (D. Minn. 1997); *Kresefky*, 169 F.R.D. at 66; *Miles v. Boeing Co.*, 154 F.R.D. 117, 121 (E.D. Pa. 1994). In this case, the plaintiffs allege disparate treatment—they claim that the ISP treated them less favorably than other officers because they are

women. In such cases, proof that the employer's decision was motived by discrimination is crucial. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). Here, the plaintiffs argue that state-wide information is necessary to establish that the defendants' proffered reasons for the adverse employment actions are pretexts for discrimination.

Generally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of a particular need and relevance of the requested information. *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 907 (6th Cir. 1991); *Epling v. UCB Films, Inc.*, Nos. 98-4226, et al., 2001 WL 584355, at *4 (D. Kan. Apr. 2, 2001); *Miles*, 154 F.R.D. at 120; *but see Hollander v. America Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990) (district court erred in refusing to compel defendant to produce company-wide information regarding termination of similarly situated persons).

A disparate treatment claim focuses on the employer's motivation for the adverse employment action at issue. If the decision was made locally, a court may properly limit discovery to the plaintiff's local work unit. *Carman*, 114 F.3d at 792 (concluding that, because decision was made locally, plaintiff was not entitled to discovery regarding decision makers in other divisions); *Onwuka*, 178 F.R.D. at 517-18; *cf. Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) (per curiam) (holding that evaluations by different supervisors do not establish pretext because "[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important"). On the other hand, if a plaintiff can establish that the employment decision was made by someone outside of her work unit, then she is entitled to broader discovery. *Kitchen v. Dial Page, Inc.*, No. 3:94 cv 215, 1995 WL 224547, at *3-4 (E.D. Tenn. Feb. 27, 1995) (reasoning that plaintiff entitled to broader

discovery where decision to terminate plaintiff made jointly by district manager and human resources

manager at defendant's home office); *Finch v. Hercules Inc.*, 149 F.R.D. 60, 64 (D. Del. 1993)

(same—local employment decision reviewed by defendant's home office). With these principles

in mind, the Court will consider whether the plaintiffs are entitled to state-wide discovery with

respect to Interrogatories 1-9, 2-1, and 1-10.

**(a) Interrogatory 1-9**

Interrogatory 1-9 states:

List all sworn employees of the [ISP] who have been eligible for promotion to the
rank of Master Sergeant since 1990 and state:

a. Names, addresses, current telephone numbers and dates of hire of
all employees promoted;

b. Names, addresses, and current telephone numbers of all employees
not promoted;

c. Date of any promotions to the rank of Master Sergeant and;

d. Date of any subsequent promotion of the identified employees to
a rank higher than Master Sergeant.

(Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) The defendants have produced promotional lists

for all ISP districts for the relevant time period. The lists disclose the name, sex, race, PID number

and final score of the officers qualified for promotion and the date of any promotions to master

sergeant (indicated by a handwritten date next to the individual's name). With respect to District

Chicago and District 9, the defendants also provided the current addresses, telephone numbers and

ranks of all employees promoted to the rank of master sergeant during the relevant time period. The

defendants argue that they should not have to provide any additional information regarding master

sergeant candidates, either from District 9 and District Chicago or from any other districts.

To obtain state-wide information regarding master sergeant candidates, the plaintiffs must establish that state-wide information is relevant to their claims. *E.g., Carman*, 114 F.3d at 792. The plaintiffs argue that because the ISP cross-promotes between districts, the plaintiffs competed with master sergeant candidates from other districts for promotions. The Court agrees that the plaintiffs are entitled to discovery regarding any individual with whom they competed for the promotions at issue. *See Bragg*, 164 F.3d at 377. However, the plaintiffs' unsupported statement that the ISP cross-promotes between districts is not sufficient to establish that cross-promotions occur. Based on the information presented, the Court cannot conclude that information regarding master sergeant candidates from other districts is relevant to this case. If further discovery establishes that the ISP cross-promotes between districts, the plaintiffs may resubmit their discovery requests regarding master sergeant candidates from other districts.

The defendants must provide all of the information requested in Interrogatory 1-9 for master sergeant candidates from District 9 and District Chicago except for the date of any subsequent promotion to a rank higher than master sergeant. This Court concludes that subsequent promotions to ranks other than master sergeant are not relevant to this action. The defendants incorrectly state that they have provided all of the requested discovery for District 9 and District Chicago. Regarding those districts, the defendants have not provided: (1) the date of hire of employees who were eventually promoted to the rank of master sergeant (information that is necessary to calculate a candidate's seniority score); or (2) the addresses and current telephone numbers of employees who were not promoted to master sergeant. The defendants must provide this information for District 9 and District Chicago master sergeant candidates for any year during the relevant time period in which one of the plaintiffs was certified for promotion to master sergeant.

-13-

**(b) Interrogatory 2-1**

Interrogatory 2-1 states:

Identify and state in detail the exact reasons why [Bobbitt, Thorpe, Liebe, Drodz, Koehler, Nichols and Kilby] were promoted to the position of Master Sergeant during the period of 1997-1999 instead of Plaintiff Byers. . . . In addition, state every reason why these individuals were considered to be "more prepared," and/or "the better candidate," and/or "more qualified" for promotion to the position of Master Sergeant than Plaintiff Byers.

(Exs. in Support of Pls.' Mot. to Compel, Ex. 3.) The defendants argue that Interrogatory 2-1 is overly broad because it seeks information regarding individuals who did not work in the same district as Byers. For the reasons stated in the preceding section, the Court sustains the defendants' objection as to the master sergeant candidates who did not work in Byers's district. Regarding Bobbitt, Thorpe, and Liebe—the individuals who worked in the same district as Byers—the defendants contend that their response to Interrogatory 1-2 provides the plaintiffs with the name of the decision maker and the reasons for the promotion. For example, the defendants' answer to Interrogatory 1-2 states in part: "Daniel Kent . . . then District Commander of District 09, recommended to his superiors that Bobbitt be promoted to the rank of master sergeant. Bobbitt was promoted to the rank of master sergeant because it was believed that he was most prepared to be promoted to that position." (Exs. in Support of Pls.' Mot. to Compel, Ex. 10.) To the extent the plaintiffs seek additional information, the defendant argue that the plaintiffs should be required to seek that information during depositions. The Court agrees. (*Supra* at 5-10.)

### (c) Interrogatory 1-10

Interrogatory 1-10 states:

List all charges, lawsuits, complaints, and reports of gender discrimination or hostile work environment to women which have been filed against the [ISP] or any of its employees from 1986 to the present and state:

> a. Names, addresses and current telephone numbers of the Complainant;
>
> b. Names, addresses, current telephone numbers and ranks of the employees accused;
>
> c. Whether an investigation was conducted by [ISP];
>
> d. Whether a lawsuit was filed;
>
> e. The disposition of the matter.

(Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) The defendants have not produced anything. The defendants argue that Interrogatory 1-10 is overly broad and not reasonably calculated to lead to evidence relevant to the plaintiffs' claims. The defendants point out that this interrogatory encompasses any complaint against any ISP employee. To fully respond, the defendants contend that they would have to disclose a complaint alleging that a janitor sexually harassed a co-worker—an incident that is not relevant to the plaintiffs' claims. In response to this argument, the plaintiffs agreed to narrow their request to only gender discrimination charges/lawsuits/complaints/reports by police officers. The plaintiffs argue that they are entitled to this information because evidence of the ISP's overall policy towards women is relevant to prove motive, intent, and a pattern of discrimination against women. The defendants continue to object to this request because it seeks information from districts other than the districts where the plaintiffs worked.

The plaintiffs are correct that evidence of other acts of discrimination by the defendant is relevant to establish pretext. *See McDonnell Douglas v. Green*, 411 U.S. 792, 804-05 (1973); *Phillip v. ANR Freight Sys. Inc.*, 945 F.2d 1054, 1056 (8th Cir. 1991) (reversing district court's exclusion of other age discrimination complaints filed against defendant); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (noting that employer's general practices relevant even in disparate treatment case). However, the fact that the plaintiffs are entitled to discovery regarding other acts of discrimination does not mean that they are entitled to state-wide discovery on that issue. Like any discovery request, the discovery of prior discrimination complaints against the defendant must be tailored to the legal issues involved in each particular case. *See Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985). For example, courts have limited such requests in time, *Burks v. Oklahoma Publishing Co.*, 81 F.3d 975, 981 (10th Cir. 1996) (affirmed district court's decision to deny request for all discrimination complaints over last ten years), and to the relevant decision-maker, *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir. 1990) (decision made locally so discovery limited locally); *cf. Flanagan v. Traveleres Ins. Co.*, 111 F.R.D. 42, 48 (W.D.N.Y. 1986) (limited to northeast region of company). At least one court has also limited such discovery to the type of discrimination, the job-category at issue, and the challenged employment decision. *Robbins*, 105 F.R.D. at 58, 62 (limiting discovery of discrimination complaints to teachers' allegations that they were denied tenure based on race or age).

In this case, the plaintiffs argue that state-wide discovery of all gender discrimination complaints by police officers is appropriate because the master sergeant promotion decisions are not made solely at the local level. According to the plaintiffs, once a district commander has recommended a sergeant for promotion to master sergeant, that recommendation must be approved

by the regional commander, the Deputy Director and finally the Director. The plaintiffs also contend that a district commander recommended that Byers be promoted to master sergeant and then a higher-level ISP official rejected that recommendation. According to the plaintiffs, the Deputy Director and the Director of the ISP both had direct involvement in decisions to block the promotion of Byers (and the promotion of anyone else who complained of discrimination). Based on the plaintiffs' claim that the alleged decision to block the promotion of Byers did not occur at the local level, it is not appropriate to limit the plaintiffs' discovery to the local level. *Kitchen*, 1995 WL 224547, at*3-4 (reasoning that plaintiff entitled to broader discovery where decision to terminate plaintiff made jointly by district manager and human resources manager at defendant's home office); *Rodger v. Elec. Data Sys., Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994) (reasoning that plaintiff entitled to division-wide discovery where division manager implemented reduction-in-force program and all layoffs had to be approved by that manager); *Finch*, 149 F.R.D. at 64 (same—local employment decision reviewed by defendant's home office). However, this does not justify extending discovery beyond the named defendants. Claims of discrimination at other districts that do not implicate the named defendants are too remote from the allegations involved in this case to warrant discovery. *See Finch*, 149 F.R.D. at 64. Accordingly, the defendants must provide all of the discovery requested in Interrogatory 1-10 (i.e., state-wide discovery) to the extent that the information: (1) involves a complaint of gender discrimination by a police officer; and (2) implicates direct involvement by any of the individual defendants. The defendants must provide this information for the years 1990 to the present. Additionally, the defendants must also provide information regarding any charges/lawsuits/complaints/reports involving failure-to-promote

allegations based on gender that occurred in District 9 or District Chicago. The defendants must provide this latter category of information for the years 1994 to the present.

### 3. Remaining Interrogatory Disputes

#### (a) Interrogatory 1-6

Interrogatory 1-6: "State each and every fact supporting any defense to Plaintiffs['] claims that Defendants assert." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) In their response, the defendants directed the plaintiffs' attention to their "responses to Plaintiffs' written discovery requests and to the documents produced in response thereto." The Court concludes that the defendants have produced the discovery containing the facts supporting their defenses. As discovery continues, if the defendants uncover any additional evidence they intend to rely on for their defense, they are under a continuing obligation to update their responses as more information becomes available.

#### (b) Interrogatory 1-13

Interrogatory 1-13 states: "State the amount of pension and/or retirement pay including earned interest Plaintiffs would have accrued had they been promoted to the rank of Master Sergeant when they first qualified for promotion." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) The plaintiffs have informed the Court that the defendants have complied with this request. Accordingly, this portion of the plaintiffs' motion is denied as moot.

#### (c) Interrogatory 1-14

Interrogatory 1-14 states: "State the amount of any additional employee benefits each Plaintiff would have accrued had they been promoted to the rank of Master Sergeant when they first qualified for promotion." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) The defendants

responded that the only additional benefits enjoyed by master sergeants are that master sergeants (1) are eligible for Command Time and Command Pay ($100 per month), and (2) have the use of an "un-striped" ISP car during off hours. The defendants state that they cannot determine the dollar value for the use of an "un-striped" ISP car during off hours. The Court concludes that the defendants have sufficiently responded to Interrogatory 1-14. Accordingly, this portion of the plaintiffs' motion is denied.

## C. Document Requests

### 1. Document Request 1-1 and 1-3

The plaintiffs move the Court for an order compelling the defendants to produce archived e-mails that were authored by one of the individual defendants and relate to either plaintiff. The defendants argue that it would be unduly burdensome for them to search the backup tapes containing the archived e-mail. The plaintiffs respond that computer-based discovery is no different than paper-based discovery.

Computer files, including e-mails, are discoverable. *Rowe Entertainment Inc. v. The William Morris Agency, Inc.*, No. 98 Civ 8272, 2002 WL 63190, at *6 (S.D.N.Y. Jan. 16, 2002) (collecting cases). However, the Court is not persuaded by the plaintiffs' attempt to equate traditional paper-based discovery with the discovery of e-mail files. Several commentators have noted important differences between the two. *See* Kenneth J. Withers, *Computer-Based Discovery in Federal Civil Litigation*, SF97 ALI-ABA 1079 (2001); Corinne L. Giacobbe, *Allocating Discovery Costs in the Computer Age: Deciding Who Should Bear the Costs of Discovery of Electronically Stored Data*, 57 Wash. & Lee L. Rev. 257 (2000). Chief among these differences is the sheer volume of electronic information. E-mails have replaced other forms of communication besides just paper-

based communication. Many informal messages that were previously relayed by telephone or at the water cooler are now sent via e-mail. Additionally, computers have the ability to capture several copies (or drafts) of the same e-mail, thus multiplying the volume of documents. All of these e-mails must be scanned for both relevance and privilege. Also, unlike most paper-based discovery, archived e-mails typically lack a coherent filing system. Moreover, dated archival systems commonly store information on magnetic tapes which have become obsolete. Thus, parties incur additional costs in translating the data from the tapes into useable form. One commentator has suggested that given the extraordinary costs of converting obsolete backup tapes into useable form, the requesting party should be required to show that production will likely result in the discovery of relevant information. *See* Wither, SF97 ALI-ABA at 1090-91.

A court can limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2). Courts have applied this rule to proposed searches of archived e-mails. *See Rowe*, 2002 WL 63190, at *7; *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 693, 641 (S.D. Ind. 2000); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 360526, at *1-2 (N.D. Ill. June 15, 1995); *In re General Instrument Corp. Sec. Litig.*, No. 96 C 1129, 1999 WL 1072507, at *6 (N.D. Ill. Nov. 18, 1999). When the burden of a request outweighs the likely benefit, courts generally shift all or part of the cost of production to the discovering party. *E.g., Rowe*, 2002 WL 63190, at *7; *see also* Fed. R. Civ. P. 34, Advisory Committee Notes, 1970 Amendment ("courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs").

In this case, it is clear that the plaintiffs' request would impose a significant financial burden on the defendants. The Court received testimony from Doug Phillips, the Public Service Administrator with Information Services for the ISP. According to Mr. Phillips, as of January 1, 2002, the ISP discontinued using their old e-mail program and switched over to a new program called Lotus Notes. It is undisputed that the new e-mail program cannot read the e-mails contained on the backup tapes. To search the backup tapes, the ISP would have to license the old e-mail program at a cost of $8000 per month. Additionally, downloading the tapes to a computer is a time-consuming process. One backup tape exists for each day of the year. To search the tapes for the previous eight years, an ISP systems programmer would have to download a batch of tapes to computer disks and then run a search of the downloaded information. Due to disk-space constraints, a programmer can download only about ten tapes at one time. It would take at least four weeks to download all of the backup tapes from 1994 to the present. It would take additional time to search the downloaded information for responsive e-mails. The defendants estimate that the total cost of responding to the plaintiffs' e-mail request would be between $20,000 and $30,000. The Court concludes that the plaintiffs' e-mail request would impose a significant financial burden on the defendants. *See Anti-Monopoly, Inc. v. Hasbro*, No. 94 Civ. 2120, 1996 WL 22976, at *2 (S.D.N.Y. Jan. 23, 1996) (holding that estimated costs of $1680 to one defendant and $5000-$6000 to another defendant are not insubstantial).

When faced with a request that would impose a significant cost on the responding party, a court should focus on the marginal utility of the proposed search. *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001). The more likely it is that the archived e-mails contain relevant information, the fairer it is that the responding party bear the cost of production; the less likely it is, the more

unjust it is to make that party bear the cost. *Id.* In this case, the plaintiffs argue that there is a high probability that the archived e-mails contain relevant information. According to the plaintiffs, one of the defendants authored an e-mail that referred to Byers as a "dyke" and to her supervisor as a "nigger." The plaintiffs claim that this e-mail surfaced during a previous Merit System Protection Board case. Vigorously disputing that such an e-mail exists, the defendants challenged the plaintiffs to provide any proof of the alleged e-mail. Based on an affidavit from Byers stating that she learned of the derogatory e-mail from one of three individuals, the Court permitted the plaintiffs to depose those three individuals. None of these individuals confirmed the existence of the e-mail. Two of the individuals denied any knowledge about any derogatory e-mails. The remaining individual stated that although he remembers talking to Byers about "inflammatory e-mails," he never observed the e-mails himself. He also did not remember if those inflammatory e-mails referred to Byers as a "dyke" and her supervisor as a "nigger." Most importantly, he did not know whether he told Byers about the e-mails or whether Byers told him. The Court concludes that the plaintiffs have not establish that this e-mail ever existed. Thus, the plaintiffs have not shown that a search of the archived e-mails would likely result in the discovery of relevant information.

Based on the cost of the proposed search and the plaintiffs' failure to establish that the search will likely uncover relevant information, the Court concludes that the plaintiffs are entitled to the archived e-mails only if they are willing to pay for part of the cost of production. *See Rowe*, 2002 WL 63190, at *13. If the plaintiffs wish to have the archived e-mails produced, they will have to pay the cost of licensing the old e-mail program. In addition to the reasons stated above, shifting part of the cost of production is warranted because the plaintiffs are in the best position to control the total cost of production. *Id.* at *11; *McPeek*, 202 F.R.D. at 33-34 (requiring producing party to pay

-22-

all costs is disincentive for requesting party to narrow demands). In this case, the plaintiffs contend that they were passed over for promotions in favor of less qualified male candidates. The plaintiffs believe that the requested e-mails may reveal the "real" reasons that they were not promoted. But rather than limit their request to the months leading up to each time that they were allegedly passed over for a promotion—the time periods most likely to have e-mails pertaining to the promotional decisions—the plaintiffs requested e-mails from every day for the last eight years. Mr. Phillips testified that the most significant factor contributing to the expense of the proposed search is the plaintiffs' insistence that the defendants search backup tapes for every day from 1994 to the present. Requiring the plaintiffs to pay part of the cost of producing the e-mails will provide them with an incentive to focus their requests. Accordingly, this portion of the plaintiffs' motion is granted to the extent that they bear the cost of licensing the old e-mail program, though the defendants shall continue to bear the expense of any review for responsive documents, as well as for privileged or confidential material.

## 2. Document Request 1-2

Document Request 1-2 seeks the following documents:

All personnel documents or files, evaluative documents, rating documents, work assignments, computer files and/or e-mail files, payroll documents, benefit documents, EEO files, investigatory files, promotional documents, grievance files, supervisory files, district files, in-house legal files or any other type of document or file maintained with respect to [Gainer, Marlin, Yokley, Kent, Johnson, Sloman, Bouche, Comerie, Erlenbush and Thorpe].

(Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) The individuals identified in this request are the named defendants. The defendants have produced Thorpe's personnel file. It is unclear if the defendants have provided any other documents that relate either to Thorpe or any other individual

defendant. The defendants argue that Document Request 1-2 is overly broad because it seeks every document relating to the named defendants—individuals who have worked for the ISP for periods ranging from 14 to 35 years. The defendants assert that the majority of documents maintained with respect to the named defendants have no bearing on the claims in this case. In response, the plaintiffs have dropped their request for payroll documents and benefit documents.

The personnel files of the individuals alleged to have discriminated against the plaintiffs are clearly relevant. *Cason v. Builders Firstsource-Southeast Group, Inc.*, 159 F. Supp. 2d 242, 247-48 (W.D.N.C. 2001); *Kanaji v. Philadelphia Child Guidance Center of Children's Hosp.*, No. 00-937, 2001 WL 708898, at *4 (E.D. Pa. June 20, 2001); *EEOC v. Kansas City S. Ry.*, No. 99-2512, 2000 WL 33675756, at *3 (D. Kan. Oct. 2, 2000). Accordingly, the defendants must produce the individual defendants' personnel files.[3]

Regarding the other documents requested in Document Request 2-1, the defendants argue that the plaintiffs' request is vague because, for example, it does not explain what the term "investigatory files" means. The Court notes that the plaintiffs are at a disadvantage. It is undisputed that the defendants maintain certain files relating to their employees. However, the plaintiffs do not know the names the ISP attaches to each of these files. The plaintiffs have submitted a discovery request seeking files that they think the defendants have in their possession. The defendants' vagueness objection is overruled—the Court concludes that the plaintiffs' request covers any files maintained by ISP with respect to any of the named defendants.

_____

[3] As with any personnel file the Court orders the defendants to produce, the defendants may withhold documents that relate to family matters or medical and health insurance information. If the defendants believe that additional information contained in the personnel files should be withheld based on privacy concerns, the defendants must follow the procedures outlined in the subsequent paragraphs. (*Infra* at 24-25.)

The defendants also argue both that the request seeks irrelevant information (because many of the documents requested have no bearing on the case) and that production of all files relating to the named defendants would be too great of a burden. The Court requires further information before it can rule on these objections. Unless it is clear from the language of the request that it would be unduly burdensome or that it seeks irrelevant information, the party resisting discovery has the burden of establishing facts justifying its objection. *Kansas City S. Ry.*, 2000 WL 33675756, at *1. Regarding each file maintained with respect to an individual defendant that the defendants do not wish to produce (i.e., each file the defendants argue is irrelevant), the defendants must produce the name of the file and a description of its contents. The description must be sufficiently detailed so that the plaintiffs can challenge the defendants' objection. For example, a description stating that a file contains an employee's medical and health insurance information is a sufficient description of the file's contents and provides a valid reason for withholding the information. Except for files withheld on a properly supported objection, the defendants must produce all files maintained with respect to any named defendant.

### 3. Document Request 1-5

Document Request 1-5 seeks the following documents: "Organizational charts for all Districts and organizational units of [ISP], showing names and positions held by each employee of the ISP from 1995 to the present." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) According to the plaintiffs, the defendants produced organizational charts for District 9 for the years 1995-1998, but they produced no charts for District Chicago. To the extent that such documents exists, the defendants must produce all organization charts for District Chicago and District 9 from 1995 to the

present. If such documents do not exist, the defendants must affirmatively state that they have searched for the documents and that their search did not uncover any responsive documents.

## 4. Document Request 1-6

Document Request 1-6 seeks the following documents: "All written policies, procedures and practices pertaining to all promotional processes for the ISP, including but not limited to documents which describe application processes and selection criteria for promotion to each rank from Sergeant and above from 1990 to the present." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) In response, the defendants produced a sample performance evaluation document. The defendants also argue that Document Request 1-6 is overly broad because it seeks information regarding "all promotional processes" even though this case concerns only master sergeant promotions. The plaintiffs are not satisfied with the performance evaluation document. They seek documents that contain the written policies, procedures, or practices regarding the promotional processes of the ISP. The Court agrees that the plaintiffs are entitled to these documents to the extent they relate to either (1) ISP hiring or promotion practices in general, e.g., a written policy stating that the ISP is an equal opportunity employer or a form relating to minority employment;[4] or (2) promotions to master sergeant. If such documents do not exist, the defendants must affirmatively state that they have searched for the documents and that their search did not uncover any responsive documents.

---

[4] According to the plaintiffs, any time the ISP promotes a "non-minority" officer, a form must be filled out explaining that decision. If the defendants have any such forms, they must produce a sample form to the plaintiffs.

## 5. Document Request 1-7

Document Reqeuest 1-7 seeks the following documents: "All promotional lists of ISP employees eligible for promotion to the rank of Sergeant and above from 1990 to the present." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) The defendants have produced the requested documents. Accordingly, this portion of the plaintiffs' motion is denied as moot.

## 6. Document Request 1-10 and 1-12

Document Request 1-10 seeks the following documents: "All documents which contain information relating to the gender composition and promotional levels of employees based on gender," (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.), and Document Request 1-12 seeks the following documents:

> All studies, reports reviews and/or analysis in underlying data in databases thereof generated, including but not limited to, any maintained in computers done by internal staff consultants, government agencies, or others related to any employment practices, policies, procedures, or statistics of Defendants [ISP] that deals with or reflects gender equity together with all underlying source material from which the data and databases were prepared and all memorandum and correspondence referring or relating thereto.

(*Id.*) The defendants produced the following documents: (1) ISP Breakdown of Sworn Workforce; (2) Agency Workforce Report; and (3) Workforce Analysis. If these three documents are the only documents the defendants have uncovered that are responsive to Document Request 1-10 and 1-12, the defendants must affirmatively state that they possess no additional responsive documents.

## 7. Document Request 1-11

Document Request 1-11 seeks the following documents: "All documents, including but not limited to any statements or memos of witnesses or potential witnesses related to any charge filed by Plaintiffs with the [EEOC, Illinois Dep't of Human Rights] or internal EEO charges filed with

the ISP." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) Although the defendants assert the attorney-client privilege, the privilege log produced at the time they asserted that privilege does not contain any documents responsive to this request. The Court interprets this response to mean that the defendants do not have any documents (privileged or unprivileged) that are responsive to Document Request 1-11. Based on the defendants' representation that they do not have any responsive documents, this portion of the plaintiffs' motion is denied. If the defendants uncover responsive documents they must either produce those documents or provide the plaintiffs with an updated privilege log. The log must contain sufficient information from which the plaintiffs can assess the applicability of the privilege. Fed. R. Civ. P. 26(b)(5); *see e.g., In Re General Corp. Securities Litig.*, 190 F.R.D. 527 (N.D. Ill. 2000).

## 8. Document Request 1-13, 1-14 and 1-15

Document Request 1-13 seeks the following documents: "All studies, reports and analysis created or disseminated by any group and/or entity which was used by the department's administration and/or management personnel in promoting and advancing females within the [ISP] from 1990 to the present." (Exs. in Support of Pls.' Mot. to Compel, Ex. 1.) Document Request 1-14 seeks "All documents related to Defendant [ISP] efforts and/or guidelines and/or policies to prevent gender discrimination in the workplace including those made by Defendants in an effort to comply with state and federal laws and regulations related to the maintenance of the non-discriminatory environment." (*Id.*) Document Request 1-15 seeks:

> All documents provided to or received from any expert witness, consultant, investigator, and/or any other agent, and any report or documents prepared, authored or drafted by such expert witness, consultant, investigator, or agent which in respect relates in any way to the treatment of women, including but not limited to, promotions, pay, working conditions, and hostile work environment.

(*Id.*) It appears that the defendants have not produced any documents. The Court finds it hard to believe that the ISP does not have a written policy on sexual harassment—a document that would clearly be responsive to Document Request 1-14. The Court orders the ISP to review its files for any responsive documents. If none are found, the defendants must affirmatively state that they have uncovered no documents responsive to Document Request 1-13, 1-14, and 1-15.

### 9. Document Requests 2-1 and 3-1

These document requests seeks the following documents: "All personnel documents or files, evaluative documents, rating documents, work assignments, computer files and/or e-mail files, payroll documents, benefit documents, EEO files, investigatory files, promotional documents, grievance files, supervisory files, district files, in-house legal files or any other type of document or file." (Exs. in Support of Pls.' Mot. to Compel, Exs. 3, 7.) Request 2-1 seeks these documents for the following individuals: Bobbitt, Liebe, Furjauic, Dahlberg, Gann, Tikusis, Turner, Sanji, Jordan, Blair, Stallworth, Kocher, Cooke, Tegert, DeBerry, Garcia, Evoy, O'Driscoll, Harris, Woolery-Terry, Born, Cavanaugh, Drodz, Koehler, Echols, Kilby, Walker. (*Id.*, Ex. 3.) Request 3-1 seeks these documents for: Freesen, Mason, Volker, and Hayden. (*Id.*, Ex. 7.) According to the plaintiffs, these individuals are the employees who were promoted to master sergeant during the period when the plaintiffs were eligible for the same promotion.

The defendants object to discovery relating to individuals that never worked as master sergeants in either District 9 or District Chicago. For the reasons stated in the portion of this order dealing with Interrogatory 1-9, the Court sustains the defendants' objection. (*Supra* at 10-18.) Regarding Freesen, however, the plaintiffs allege that Freesen was transferred into District 9 in lieu of promoting Byers. Based on this allegation, the Court concludes that the plaintiffs are entitled to

discovery relating to Freesen. The Court also concludes that the plaintiffs are entitled to discovery regarding any of the individuals named in Document Requests 2-1 and 3-1 who were promoted to the rank of master sergeant from sergeant positions in District 9 or District Chicago (the districts in which the plaintiffs worked as sergeants).

The Court concludes that the defendants must produce the personnel files for these individuals. To establish a prima facie case for a failure-to-promote claim, a plaintiff must establish that she had the same or better qualifications that the individual who was actually promoted. *Bragg*, 164 F.3d at 377. The individuals named in the above requests are all ISP employees who were promoted to master sergeant. In order to compare their qualifications to the individuals actually promoted, the plaintiffs require any documents relating to the qualifications of these individuals. In response to this request, the defendants produced some personnel files. In addition to the personnel files already produced, the defendants' counsel stated at the January 18, 2002 hearing that the defendants would produce all non-privileged documents contained in the personnel files of Furjanie, Dahlberg, Gann, Tikusis, Turner, Blair, Stallworth, Kocher, Cooke, Tegert, DeBerry, Garcia, Evoy, O'Driscoll, Harris, Cavanaugh, and Sanji. If the defendants have not yet produced these documents, they must produce them.

The defendants argue that the remaining portions of the plaintiffs' requests are vague and ambiguous—because, for example, they do not define "investigatory files" and "work assignments"—and overly broad—because they seek "any other type of document or file." For the reasons stated in the section of this order dealing with Document Request 1-2, the Court concludes that it lacks sufficient information to rule on the defendants' objections. (*Supra* at 24-25.) Regarding each file maintained with respect to these individuals that the defendants do not wish to

produce, the defendants must produce the name of the file and a description of its contents. The description must be sufficiently detailed so that the plaintiffs can challenge the defendants' objection. Except for files withheld on a properly supported objection, the defendants must produce all files maintained with respect to these individuals.[5]

## CONCLUSION

Based on the foregoing, this Court GRANTS IN PART and DENIES IN PART the plaintiffs' Motion to Compel Defendants' Answers to Plaintiffs' Continuing Sets of Interrogatories and Continuing Requests for Production of Documents and Certification of Compliance with Federal Rule of Civil Procedure 37.

---

[5] As explained in the previous paragraph, "these individuals" means Freesen and the persons named in Document Requests 2-1 and 3-1 who meet one of the following criteria: (1) worked as a master sergeant in District 9 or District Chicago; or (2) worked as a sergeant in District 9 or District Chicago and was promoted to a master sergeant position in another district.

**E N T E R:**

_Nan R. Nolan_

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: _May 31, 2002_